J. A. VAN WINKLE & Co., plaintiffs in error, *vs.* THE SOUTH CAROLINA RAIL ROAD COMPANY, defendant in error.

When a common-carrier receives goods for transportation, and in case of the loss of the goods, seeks to protect himself from liability therefor, on the ground, that the goods were destroyed by the public enemies of the State:

*Held*, that as the presumption of the law is against the carrier in case of loss, it is incumbent on him to prove, by clear and satisfactory evidence, that the goods were so destroyed whilst in his possession, in order to exonerate him from liability therefor.

Case.   Motion for new trial.   Decided by Judge Gibson. Richmond Superior Court.   June Term, 1867.

Van Winkle & Co. sued the South Carolina Rail Road Company for the loss of certain goods, delivered by them to it, as a common-carrier.   The defence was that the goods were destroyed by the public enemies.

On the trial, the following facts were shown by the plaintiffs.   On the 1st day of February, 1865, the company received from plaintiffs' agent, at Columbia, South Carolina, three boxes, containing writing paper, worth $652 50, and directed to plaintiffs at Augusta, Georgia, and gave a receipt (in the usual form, stating that contents and value were unknown etc.,) promising therein to deliver them to plaintiffs, at Augusta, Georgia.

On the 4th of February, 1865, one of the plaintiffs called at the company's depot and asked Marly, the agent, if the goods were there; he examined, said yes, and told him to send for them.   This plaintiff called for the bill of freight; it was presented by one McGrath, and paid; (witness thought Marly was present during all the time aforesaid.)   The receipt for freight was as follows:

"AUGUSTA, GA., Feb. 1st, 1865.

*Van Winkle & Co.,*

   To South Carolina Rail Road Co., etc., For Freight Dr. Per List No. 19, Columbia: 3 boxes 1670..........$53 50.
   Paid Feb. 4th, 1865.                        McGRATH."

Van Winkle & Co., *vs.* The South Carolina Railroad Company.

Plaintiffs' porter, on the 4th of February aforesaid, called for the goods and was told to call again, as the cars had not been unloaded; called again in the evening, and received the same answer; called again next morning, and was told that the cars were left on the other side of the river.   The person who gave these answers to the porter was an Irishman, who was attending to the delivery of freight at the depot, but the porter did not know him.   The plaintiffs showed the value of the goods and closed.

The defendant examined A. W. LEWIS, who testified that *he* never made said statements to plaintiff, that he was the only authorized agent of the company at that point, to speak about freight, all the others were mere laborers under him; that the distance was 143 miles, and, at that time, freight-trains usually took four, five or even six days to make the trip.   MARLY testified, that he was the general agent of the company at Augusta, that it was not his duty to receive freight, and it was not usual for him to know whether freight had arrived or not.   The custom was for Lewis, the freight agent, to deliver the freight.   He did not remember making said statement to the plaintiff, and thought he could not have done so, because he knew nothing about the freight, and thought that the statement was first heard by him when the plaintiff so testified on this trial.   He also testified that it took five or even six days, at that time, to get freight from Columbia.   The Government used the trains so much that much freight accumulated at Columbia, and besides, freight-trains laid over one day at Branchville.   Both Lewis and Marly testified also, that freight bills, from which the bills were made out, were always sent by passenger-trains, and arrived at Augusta the first day, the freight being usually three or four days later in coming, and the bills were often paid before the goods arrived.

The defendant's assistant superintendent, in February, 1865, principally engaged at Branchville, had answered interrogatories, and they were read by the defendant.   They stated, substantially, that the United States troops took possession of that part of the South Carolina Railroad between

Aiken, South Carolina, and Edisto river, between the 3d and 7th of February, 1865; that the Confederate States troops took possession and control of the trains of the South Carolina Railroad, by command of Generals Beauregard and Hardee. The trains of other roads were put upon that road by the same authority, the trains of that road being insufficient for the work needed. There were no trains running regularly between Columbia and Augusta. Cars from Columbia for Augusta, were taken back to Columbia, after the occupation of the road by United States forces; all cars that were in Augusta from Columbia, or elsewhere, were run into the interior of Georgia for protection. The Confederate forces controlled the trains of the defendants at least twelve months before the United States' troops occupied the road. The last cars that reached Augusta from Columbia, left Columbia on the 30th of January, 1865. They were unloaded by Captain Sharpe, Confederate quartermaster at Columbia, and the cars used for Confederate stores, unloaded from cars, and put their contents into depot at Columbia, where they were burnt by United States forces. The evidence being closed, the Court charged the jury, and they found for the defendants. What he was requested to charge, and what he did charge, appears only by the motion for new trial, and the Judge's decision. Thereupon, the plaintiff moved for a new trial upon the following grounds, among others:

1st, 2d and 3d. Because the verdict is contrary to law, to evidence, etc.

6th. Because the Court erred in refusing the following requests which were submitted in writing, to-wit:

1. That common-carriers are bound as insurers, and insure against loss from any cause whatever except the act of God, or of the public enemies. Where the defence is the act of the public enemies, it must be shown to be the act of public enemies.

2. The South Carolina Rail Road Company, the defendant in this case, is a common-carrier, and subject to the

above common law rule; and is bound to show, to the satisfaction of the jury, that its defence comes under one or the other of the heads stated.

\*      \*      \*      \*      \*      \*      \*

6. If the defendant had even given notice under the Act of 1863, and afterwards received freight to transport, it would be liable for any and all loss or damage to such freight, and even a contract under such circumstances, relieving the common-carrier from liability, would be void and of no effect. He could only plead under that Act (in addition to his common law defence) by way of justification, seizure by or loss by the act of the Confederate Government.

7. If the above proposition be true, much more is it true that their liability is clear and unchanged, where they had given no notice that they would not receive and transport freight.

7th. Because the Court erred in charging the jury as follows:    \*      \*      \*      \*      \*

" If the non-delivery of the goods sued for, was caused by the act of the Confederate Government, or its armies, or the United States Government, or its armies, or the act of God, the defendants are not liable, if from other causes they are."

The Judge refused a new trial.

Plaintiffs excepted, and assigned the same for error on each of said grounds.

HOOK & CARR, for plaintiffs in error.

WM. T. GOULD, for defendant in error.

WARNER, C. J.

This was an action brought by the plaintiffs, in the Court below, against the defendant as a common-carrier, to recover the value of the contents of three boxes, delivered by the plaintiffs to the defendant, to be transported from Columbia, South Carolina, to Augusta, Georgia, which were alleged to have been lost whilst in the possession of defendant. The defence set up by the defendant is, that the goods were

destroyed by the public enemies of the State. Upon the trial, in the Court below, a verdict was found for the defendant, and a motion was then made for a new trial, which was refused. The refusal of the Court to grant the motion for a new trial, is assigned for error here. By the law of this State, as defined by the Code, the defendant was a common carrier, and as such, was bound to use extraordinary diligence. In cases of loss, the presumption of the law is against him, and no excuse will avail him, unless it was occasioned by the act of God, or of the public enemies of the State. Revised Code, section 2040. Thus it will be seen, that in case of the loss of the goods, the presumption of the law is against the common carrier, and when he sets up the defence, that the loss of the goods was occasioned by the public enemies of the State, the burden of proof is upon him to *establish that fact.* 2d Greenleaf's Ev., 180, section 219. What is the evidence contained in this record? That the three boxes of goods, received by the defendant from the plaintiffs, were destroyed by the public enemies of the State. The evidence entitled to most weight upon that question, is that of Gilbert, who stated, "that the last cars that reached Augusta from Columbia, left Columbia on the 30th January, 1865—they were unloaded by Capt. Sharpe, Confederate quartermaster at Columbia, and were used for Confederate stores, unloaded from cars, and put into the depot at Columbia, where they were burnt by United States forces." These goods, now sued for, were received by the defendant on the 1st day of February, 1865. The cars that left Columbia on the 30th of January, which the witness swears were unloaded there, and the contents thereof put into the depot at Columbia, where they were burned by the United States forces, could not have contained the three boxes of the plaintiff s' goods now sued for, as the same were not received by the defendant at that time. The burden of proof is on the defendant to show that the *plaintiffs' goods received by him,* were destroyed by the public enemies of the State, in order to exonerate him from liability therefor, which the evidence in this record, in our judgment, fails to do. The Court below,

therefore, erred in its judgment, in not granting a new trial in this case, upon the ground, that the verdict was contrary to the law and the evidence.

. Let the judgment of the Court below be reversed.